UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JERSON ALEXANDER VASQUEZ
GONZALES,

                    *Petitioner*,

              v.                                    No. 1:26-cv-00618-MSN-WEF

PAUL PERRY, *et al.*,

                    *Respondents*.

<u>ORDER</u>

This matter comes before the Court on Jerson Alexander Vasquez Gonzales's ("Petitioner") Petition for Writ of Habeas Corpus (ECF 1) in which he challenges the lawfulness of his detention by Immigration and Customs Enforcement ("ICE") and his potential removal to a third country. Specifically, Petitioner alleges that his ongoing detention violates 8 U.S.C. § 1231, as interpreted by *Zadvydas v. Davis*, 533 U.S. 678 (2001), and his potential removal to a third country without an opportunity to express a credible fear of persecution or torture would violate his right to due process under the Fifth Amendment's Due Process Clause.

For the reasons that follow, the Court concludes that Petitioner's continued detention violates 8 U.S.C. § 1231. Accordingly, the Court will GRANT the Petition and ORDER Petitioner's immediate release.

I.      **BACKGROUND**

The facts in this matter are largely undisputed. Petitioner is a 28-year-old citizen of El Salvador with no claim to citizenship of any other country. ECF 1 ¶ 12. When Petitioner was 10 years old, he began seeing thing that no one else could see as a result of undiagnosed and untreated

schizophrenia. *Id.* at ¶¶ 13-14. Petitioner's hallucinations caused him to became suicidal and start engaging in self-harm. *Id.* at ¶ 13.

Before Petitioner left El Salvador around 2015, he was targeted by gangs in the area. *Id.* at ¶ 14. Gang members beat Petitioner on three different occasions, including on one occasion in which Petitioner witnessed a gang murder. *Id.* After witnessing the gang murder, gang members threatened to kill Petitioner and his mother. *Id.* Petitioner was also beaten by police on at least one occasion. *Id.*

Petitioner arrived in the United States sometime before 2018. *See id.* at ¶ 15. In 2018, Petitioner was convicted of malicious wounding and carnal knowledge of a minor, for which he spent 19 months in prison. *Id.*

On July 8, 2019, following his release from incarceration, ICE issued Petitioner a Final Administrative Removal Order pursuant to 8 U.S.C. § 1228(b), and took him into custody. *Id.* at ¶ 16. Once in custody, Petitioner expressed a credible fear that he would be persecuted and tortured were he to be deported to El Salvador. *Id.*; ECF 1-6.  As a result, ICE placed Petitioner in withholding-only immigration proceedings and, on April 8, 2020, an Immigration Judge ("IJ") granted Petitioner deferral of removal to El Salvador under the Convention Against Torture ("CAT"), preventing his deportation to El Salvador. ECF 1-2 at 3. Petitioner's deferral of removal order became final on May 8, 2020. ECF 1 ¶ 18. On June 24, 2020, DHS released Petitioner from custody on an Order of Supervision after almost a full year in detention. ECF 8-1 ¶ 10.

Following his release, Petitioner moved apartments and failed to register his new address on the sex offender registry. ECF 1 ¶ 21. Petitioner was thus arrested sometime in 2021 for failing to register as a sex offender. *Id.* In August 2021, Petitioner was hospitalized following a mental health break. *Id.* at ¶ 22. Following his release from the hospital around September 2021, Petitioner

2

cut off his GPS monitors issued by the Virginia Court and ICE. *Id.* at ¶¶ 21-22. This led Virginia authorities to arrest Petitioner again and, on August 30, 2023, he was convicted of failing to register as a sex offender and sentenced to a term of incarceration. *Id.* at ¶ 22; ECF 8-1 ¶ 11.

Upon his release from incarceration in April 2025, DHS issued Petitioner a Notice of Revocation of Release and placed him back into immigration custody for violating the conditions of his release. ECF 8-1 ¶ 12. DHS then undertook several efforts to remove Petitioner, all of which failed. In June 2025, DHS submitted I-241 Forms to Ecuador, Guatemala, and Honduras, to see if these countries would accept Petitioner. *Id.* at ¶ 13. All three countries declined. *Id.* at ¶¶ 13-14. On June 30, 2025, DHS conducted a 90-day Post Order Custody Review and decided to keep Petitioner detained pending ongoing efforts to remove him to a third country. *Id. at* ¶ 15. Then on July 9, 2025, DHS filed a motion to reopen Petitioner's case before the IJ to terminate Petitioner's prior grant of deferral of removal to El Salvador and, in the alternative, remove Petitioner to Mexico. *Id.* at ¶ 16; ECF 1 ¶ 23. On December 5, 2025, an IJ once again granted Petitioner CAT protection from removal to El Salvador, concluding that, were Petitioner to be removed to El Salvador, he would likely be arrested and tortured given his criminal history, his mental health conditions, and tattoos that he has on his face and body. ECF 1-3 at 4, 9. The IJ also granted Petitioner CAT protection from removal to Mexico for similar reasons. *Id.* at 10-11.

DHS did not appeal the decision IJ's decision. ECF 1 ¶ 24. Nevertheless, DHS has kept Petitioner detained since the IJ's order became final.

On March 3, 2026, Petitioner filed the instant Petition seeking his immediate release from custody. ECF 1. His Petition names Russell Hott, the Acting Field Director of ICE Enforcement and Removal Operations' Washington Field Office; the DHS Secretary[1]; and Pamela Bondi, the

---

[1] The Petition names Kristi Noem as the DHS Secretary who served in that position at the time the Petition was filed.

Attorney General (collectively, "Federal Respondents"). ECF 1. The Petition also names Paul Perry, the warden of the Caroline Detention Facility, where Petitioner is detained. *Id.* Petitioner represents that, if he is released from ICE custody, he will have the support of a team of social services staff at Amica Center who can support his goals of stability and continued mental health treatment and ensure that he complies with his current order of probation. ECF 1 at ¶ 26.

On March 6, 2026, after the Petition was filed, DHS nominated Petitioner for removal to a third country. DHS claims that, "[a]t this time, the third country remains undisclosed due to ongoing diplomatic negotiations regarding third country removal. DHS is awaiting confirmation of Petitioner's acceptance." ECF 8-1 ¶ 18.

## II.    LEGAL STANDARD

Under 28 U.S.C. § 2241, district courts may grant habeas relief to petitioners who are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

The central question here is whether Petitioner's detention violates 8 U.S.C. § 1231, which governs the detention and removal of noncitizens following final orders of removal. Section 1231(a) provides that DHS "shall detain" and physically remove noncitizens from the United States during a 90-day "removal period." 8 U.S.C. § 1231(a)(1)(A), (2). That period commences upon one of three events: (i) when an removal becomes administratively final; (ii) if the removal order is judicially reviewed and a court orders a stay of the removal, the date of the court's final order; or (iii) if a noncitizen is detained or confined (except under an immigration process), the date the noncitizen is released from detention or confinement. 8 U.S.C. §1231(a)(1)(B).

After the 90-day deadline for removal, DHS may release a noncitizen subject to terms of supervision. 8 U.S.C. § 1231(a)(6). DHS may also continue to detain a noncitizen in certain

circumstances, including where the noncitizen is inadmissible or DHS determines that the noncitizen is "a risk to the community or unlikely to comply with the order of removal." 8 U.S.C. § 1231(a)(6); *see also Castaneda v. Perry*, 95 F.4th 750, 755 (4th Cir. 2024).

While 8 U.S.C. § 1231(a)(6) does not impose an explicit time limit on the length of a noncitizen's detention following a final removal order, the Supreme Court has recognized that "serious constitutional concerns" would arise if § 1231 were interpreted to allow for "indefinite detention." *Zadvydas*, 533 U.S. at 682. Thus, in *Zadvydas*, the Supreme Court construed the statute to contain an implicit limit on terms of detention, "the application of which is subject to federal-court review." *Id.* Under *Zadvydas*, a noncitizen's detention pursuant to Section 1231 is presumptively unlawful and violates due process if his detention extends for more than six months and the petitioner "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at 701. If a petitioner makes this showing, the burden shifts to the government to rebut the showing. *Id.* "[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely [will] shrink." *Id.*

## III.   DISCUSSION

The government appears to concede that Petitioner has been detained for longer than the presumptively reasonable six-month period under *Zadvydas*. *See* ECF 8 at 6-8. By the Court's calculation, Petitioner has been detained for roughly 23 months total. *See* ECF 8-1 ¶¶ 7, 10, 12. Petitioner's most recent period in detention has extended for nearly a full year. ECF 8-1 ¶ 12. The question thus becomes whether Petitioner has provided good reason to show that there is no significant likelihood of his removal in the reasonably foreseeable future. *See Zadvydas*, 533 U.S. at 701.

Petitioner has made this showing. First, Petitioner has received two judicial orders preventing ICE from removing him to El Salvador—the only country of which he is a citizen—or to Mexico—one of the third countries that ICE identified as a potential for removal. ECF 1-2 at 3; ECF 1-3 at 4. As courts in this district have explained, "[a] grant of withholding of removal substantially increases the difficulty of removing an individual." *Banoub v. Crawford*, --- F. Supp. 3d ---, 2025 WL 3723458, at *9 (E.D. Va. Dec. 23, 2025) (quoting *Zavvar v. Scott*, No. 25-cv-2104-TDC, 2025 WL 2592543, at *7 (D. Md. Sept. 8, 2025)); *see also, e.g.*, *Montezano Martinez v. Perry*, 1:25-cv-2274-AJT-IDD, at 5 (E.D. Va. Feb. 6, 2026) (explaining that "this Court, as well as others within the Fourth Circuit, have tended to order a petitioner released where removal to their native country has already been withheld and immigration officials have engaged in protracted third-country removal efforts with no success and uncertain prospects"). Petitioner's CAT protection from removal to his country of origin, as well as a third country alternative, presents exceptionally strong evidence that ICE will not be able to remove him in the foreseeable future.

Second, there is no indication that DHS will be able to remove Petitioner to a country other than El Salvador or Mexico. Petitioner has shown that third country removals, as a general matter, are exceedingly rare. According to publicly available data, unrebutted by Federal Respondents, from fiscal year 2020 to fiscal year 2023, ICE was able to remove only five noncitizens who had been granted withholding or CAT relief to alternative countries. ECF 1 ¶ 34; ECF 1-7. Even more striking is a Deportation Officer's email from 2024 in response to a question about whether they had seen a third country accept individuals removed from the United States. The Officer responded, "Lol no I haven't seen a country actually accept a detainee, I'm not even sure if I'd know what to do if they did actually accept." ECF 1-8 at 2.

6

The rarity of third country removals has been borne out by Petitioner's experience. Ecuador, Guatemala, and Honduras have all declined to accept Petitioner. ECF 8-1 ¶¶ 13-14. And while Federal Respondents claim that DHS has "officially nominated" Petitioner for removal to a third country, they offer no assurances that any other countries would be more likely to accept him. *See* ECF 8 at 7. Indeed, Federal Respondents have not disclosed the name of the third country, they have not described any steps they have taken to effectuate Petitioner's removal to that country, they have offered no timeline for Petitioner's removal, and they have not attempted to explain why that country might be more willing than any of the others to accept Petitioner. Having given no indication that a third country will actually accept Petitioner, his removal is not reasonably foreseeable. *See, e.g.*, *Banoub*, 2025 WL 3723458, at *10 (concluding that, where multiple countries had refused to accept a petitioner with CAT withholding, he had met his burden to show that removal was not significantly likely); *Zavvar*, 2025 WL 2592543, at *7 (finding that removal was not reasonably foreseeable where a petitioner was granted CAT withholding and the government received no response from the third countries it reached out to).

Lastly, the Court notes that, even if DHS locates a third country willing to accept Petitioner, he may be statutorily protected from removal under CAT.[2] *See, e.g.*, C.F.R. § 208.16(a) (governing withholding of removal under the INA and CAT). The additional processes that would be triggered

---

[2] Petitioner argues in Count II of his Petition that his removal to a third country may violate his right to due process if he is not given an adequate opportunity to express credible fear. The Court concludes that this claim is not yet ripe for review. *See Doe v. Va. Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013) ("A claim should be dismissed as unripe if the [petitioner] has not yet suffered injury and any future impact 'remains wholly speculative.'" (quoting *Gasner v. Bd. of Supervisors*, 103 F.3d 351, 361 (4th Cir. 1996))). His argument at this juncture is hypothetical; Petitioner has not alleged any impending removal to a third country and Federal Respondents claim that "DHS has not yet formalized plans to remove Petitioner to a third country." ECF 8 at 8. The Court will therefore dismiss Count II without prejudice.

Petitioner is right to point out, however, that Federal Respondents cannot have it both ways. ECF 9 at 10. By disclaiming any formal plans to remove Petitioner to a third country, they underscore just how speculative his removal is.

by his potential third country removal weighs against a finding that removal is reasonably foreseeable. *See Banoub*, 2025 WL 3723458, at *10 (concluding that potential for deferral of removal under CAT counseled against finding removal reasonably foreseeable).

In sum, by pointing to his CAT withholding to El Salvador and Mexico, the refusal of three countries to accept him post-removal, the lack of clear government progress towards his removal to a third country, and the additional process any third-country removal would entail, Petitioner has more than met his burden to show that there is no significant likelihood that he will be removed in the reasonably foreseeable future.

Federal Respondents have not produced evidence to rebut this showing. They have not located a country who has agreed to accept Petitioner, let alone begun actively seeking his travel documents to that country. On the contrary, their only claim is that DHS has taken active steps to remove Petitioner by nominating him for third country removal *after* he filed his Petition. ECF 8 at 8. But, as explained above, DHS's declaration that an undisclosed country might accept Petitioner at some undefined time based on undisclosed negotiations is woefully insufficient. *See Banoub*, 2025 WL 3723458, at *12 (concluding that respondents' "nomination" of petitioner to "an unknown third country, who may or may not accept [petitioner] on an unknown timeframe," cannot rebut a showing that removal was unlikely). The Court also notes that Federal Respondents did not begin their most recent efforts to locate a third country until after he filed his Petition—three months after Petitioner's latest order granting him CAT withholding. *See* ECF 8-1 ¶ 18. Such "untimely and haphazard attempts to find a suitable third country do not approach conduct that this Cour[t] can deem 'active efforts.'" *Banoub*, 2025 WL 3723458, at *12.

This Court has previously admonished that the government may not "detain a noncitizen and then sit on its hands." *Xiao v. Noem*, No. 1:25-cv-2382-MSN-IDD, at 8 (E.D. Va. Jan. 30,

2026) (quoting *Douglas v. Baker*, --- F. Supp. 3d ---, 2025 WL 2997585, at *5 (D. Md. Oct. 24, 2025)). This is precisely what the government has done here. Accordingly, Petitioner is entitled under *Zadvydas* to issuance of a writ of habeas corpus and release.

## IV.    CONCLUSION AND ORDER

For the foregoing reasons, the Court concludes that Petitioner's continued detention violates 8 U.S.C. § 1231. Therefore, it is hereby

ORDERED that the Petition is GRANTED as to Count I; and it is further

ORDERED that no later than 4:00 p.m. on Friday March 20, 2026, Federal Respondents RELEASE Petitioner from detention with all of his personal property; and it is further

ORDERED that Petitioner's order of supervision is RESTORED immediately; and it is further

ORDERED Federal Respondents and any of Federal Respondents' officers, agents, servants, employees, and attorneys, as well as other person acting in concert, are ENJOINED from re-detaining Petitioner except upon a showing of sufficient changed circumstances with respect to the prospects for removal to a qualifying consenting country; and it is further

ORDERED that Petitioner's counsel immediately provide the Court and Federal Respondents with a fixed address for Petitioner's release so that DHS may notify him of future custody proceedings[3]; and it is further;

ORDERED that Respondents file a status report with this Court within three days stating whether Petitioner has been released and if not, why not; and it is further

ORDERED that Count II of the Petition is DISMISSED WITHOUT PREJUDICE.

---

[3] Petitioner should redact personal identifiers or file those documents under seal.

The Clerk is directed to enter judgment in Petitioner's favor pursuant to Federal Rule of Civil Procedure 58, forward copies of this Order to counsel of record, and close this civil action.

**SO ORDERED.**

/s/
Michael S. Nachmanoff
United States District Judge

March 20, 2026
Alexandria, Virginia

10